**25SL-CC02942**

# IN THE CIRCUIT COURT OF ST. LOUIS CITY COUNTY, MISSOURI

| | |
|---|---|
| **DINAH BARNETT, individually and**<br>**on behalf of those similarly situated,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Case No.:** |
| **v.** | ) |
| | ) **Division:** |
| **ST. ANDREW'S RESOURCES FOR** | ) |
| **SENIORS SYSTEM** | ) |
|     **Serve:** | ) |
|         Registered Agent | ) |
|         National Registered Agents, Inc. | ) |
|         5661 Telegraph Rd Ste 4B | ) |
|         Saint Louis, MO 63129-4275 | ) |
| | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

COMES NOW Dinah Barnett ("Plaintiff"), individually and on behalf of all citizens who are similarly situated, for her Petition for Damages against Defendant St. Andrew's Resources for Seniors System (hereinafter sometimes referred to as "St. Andrew's" or "Defendant") respectfully states and alleges as follows:

### NATURE OF THE CASE

1.    This action brought by Plaintiff, individually and on behalf of all those similarly situated (*i.e.*, the Class Members), seeks to redress Defendant's willful and reckless violations of their privacy rights. Plaintiff and Class Members were prospective employees and current/former employees of Defendant St. Andrew's who entrusted their Personally Identifiable Information ("PII") to Defendant St. Andrew's. Defendant betrayed Plaintiff's and Class Members' trust by failing to properly safeguard and protect their PII and publicly disclosing their PII without authorization in violation of Missouri common law.

1

LGL9797A11A0AAA.000243.08.38.000000



2.     This action pertains to Defendant's unauthorized disclosure of the Plaintiff's and Class Members' PII that occurred on or around February 8, 2024. (the "Breach").

3.     Defendant disclosed Plaintiff's and Class Members' PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PII.

4.     The wrongfully disclosed PII included, *inter alia*, Plaintiff' and Class Members' names and financial account information.

5.     Defendant flagrantly disregarded Plaintiff's and the Class Members' privacy and property rights by intentionally, willfully, and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' PII from unauthorized disclosure. Plaintiff's and Class Members' PII was improperly handled, inadequately protected, and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the Class Members' rights, both as to privacy and property.

6.     Plaintiff and the Class would not have provided their PII to Defendant if they had known Defendant would not protect the information as it promised to do.

7.     Plaintiff and Class Members have standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff and the Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

8.     Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the Class at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading

2

provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of breaches. According to the Javelin Report, individuals whose PII is subject to a reported breach—such as the Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's PII and not yet used the information will do so at a later date or re-sell it.

9.    Plaintiff and Class Members have also suffered and is entitled to damages for the lost benefit of their bargain with Defendant. Plaintiff and members of the Classes provided Defendant with their PII and labor, in exchange for employment and/or prospective employment, = including the promise of protection of their PII. The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and the Class Members should have received when they exchanged their labor and PII for employment and/or prospective employment and data privacy from Defendant, and the value of what they actually did receive: services without adequate privacy safeguards. Plaintiff has been harmed in that she (1) provided confidential information that she otherwise would not have, and (2) exchanged her confidential information for privacy protections she did not receive. In that respect, Plaintiff and Class Members have not received the benefit of the bargain and have suffered an ascertainable loss.

10.    Accordingly, Plaintiff and Class Members seek redress against Defendant for breach of implied contract, common law negligence, negligent training and supervision, and negligence *per se*.

11.    Plaintiff and Class Members seek all (i) actual damages, economic damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.



## JURISDICTION AND VENUE

12.    The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because Plaintiff and Defendant are citizens of the State of Missouri and Defendant is a nonprofit corporation operating, and licensed under, the laws of the State of Missouri.

13.    Venue is proper in St. Louis City County, Missouri, because Plaintiff was first injured in St. Louis, St. Louis City County, Missouri.

## PARTIES

14.    Plaintiff Dinah Barnett is an adult individual residing in High Ridge, Jefferson County, Missouri.

15.    At all relevant times, Defendant has been a nonprofit corporation in the City and surrounding County of St. Louis City, Missouri which provides senior care services to St. Louis, Missouri residents. Defendant St. Andrew's headquarters is located at 1001 Craig Rd, Suite 200, Saint Louis, MO, 63146.

## BACKGROUND FACTS

16.    Certain allegations are made upon information and belief.

17.    Defendant St. Andrews is a health care provider pursuant to state and federal law, providing health care and medical services to the general public.

18.    Plaintiff and Class Members are prospective employees or current/former employees of Defendant St. Andrew's.

19.    As a part of their business operations, Defendant collects and maintains PII of their prospective employees and current/former employees.



20.    Plaintiff and the Class Members were prospective employees or current/former employees of Defendant St. Andrews and, as a result, provided their PII and labor to Defendant in exchange for data security.

21.    When Plaintiff and the Class Members provided their PII to Defendant in connection with employment and/or prospective employment, they entered into an implied contract with Defendant for the adequate protection of their PII.

22.    Defendant is required to maintain the strictest privacy and confidentiality of Plaintiff's and Class Members' PII.

23.    Defendant St. Andrew's represented that it would ensure the data security of its employees and/or prospective employees PII, including through the privacy policy on its website from which individuals can apply for employment with it.[1]

24.    On or about February 8, 2024, Defendant St. Andrew's, "was alerted to suspicious activity in certain email accounts."[2]

25.    Defendant St. Andrew's sent a Data Breach letter to its prospective employees and current/former employees on or around February 7, 2025. In part, the letter stated, "On or around February 8, 2024, St. Andrew's was alerted to suspicious activity in certain employee email accounts." And, further, "On January 6, 2025, St. Andrew's finalized this review and determined that information related to you could be affected."

26.    Almost *one year* after St. Andrew's first detected suspicious activity on its computer systems, on or about February 8, 2024, Defendant began notifying affected individuals of the Data Breach, sending out Notice Letters stating the following[3]:

---

[1] See https://standrews1.com/privacy-policy/
[2] https://standrews1.com/wp-content/uploads/2025/02/St.-Andrews_Website-Notice.pdf
[3] See Exhibit A (Notice of Data Breach).



St. Andrew's Resources for Seniors System ("St. Andrew's") is writing to notify you of an incident that may have impacted your personal information. This letter provides details of the incident, our response, and steps you may take to help protect against the possible misuse of your information should you feel it's appropriate to do so.

**What Happened?** On or around February 8, 2024, St. Andrew's was alerted to suspicious activity in certain employee email accounts. St. Andrew's launched an investigation, with the assistance of third-party forensic specialists, to determine the nature and scope of the activity. The investigation determined that an unauthorized actor gained access to the email accounts of certain St. Andrew's employees. Thereafter, St. Andrew's undertook a comprehensive review of the contents of these email accounts to assess what information was contained therein and to whom it related and to find address information for affected individuals. On January 6, 2025, St. Andrew's finalized this review and determined that information related to you could be affected.

**What Information Is Involved?** The information potentially impacted by this incident includes your name and financial account information.

27.     The disclosure of the PII at issue was a result of the Defendant's inadequate safety and security protocols governing PII.

28.     To be clear, there are numerous issues with St. Andrew's Data Breach, but the deficiencies in the way St. Andrew's has handled the Breach exacerbate the circumstances for victims of the Data Breach: (1) St. Andrew's waited nearly ***one year*** to notify Class Members of the Data Breach; (2) In its notice, St. Andrew's fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that St. Andrew's continues to maintain is secure; and (3) St. Andrew's fails to state how the breach itself occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

6



29.    On February 7, 2025, almost over a year after the Data Breach, St. Andrew's filed a notice of data breach with the Attorney General of Maine indicating that the cybersecurity incident was a cyberattack that occurred on or about December 13, 2023.[4]

30.    Upon information and belief, the cyberattack was targeted at Defendant, due to its status as an entity that collects, creates, and maintains Private Information on its computer networks and/or systems.

31.    As evidenced by the Data Breach, the Private Information contained in Defendant's network was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

32.    Defendant's lack of investigation regarding the egregious disclosure of Plaintiff's and the Class Members' highly sensitive information is a gross disregard to the Plaintiff's and Class Members' concerns of their privacy.

33.    The disclosure of the PII at issue was a result of the Defendant's inadequate safety and security protocols governing PII.

34.    The wrongfully disclosed PII included, *inter alia*, Plaintiff's and the Class Members' names and financial information.

35.    As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PII of their prospective employees and current/former employees, Plaintiff's and Class Members' PII was stolen, compromised, and wrongfully disseminated without authorization.

36.    Defendant has a duty to their prospective employees and current/former employees to protect them from wrongful disclosures.

---

[4] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/c630583a-fb0f-4700-b1fa-72747977aa30.html (last visited March 10, 2025).

7



37.    As a sophisticated entity in possession of PII, Defendant is required to train and supervise their employees regarding the policies and procedures as well as the State and Federal laws for safeguarding PII.

38.    As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, unauthorized individuals now have Plaintiff's and Class Members' compromised PII.

39.    There is a robust international market for the purloined PII. Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and Class Members' at an imminent, immediate, and continuing increased risk of identity theft, identity fraud[5] and medical fraud.

40.    Identity theft occurs when someone uses an individual's PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (last visited Jan. 18, 2013). The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

41.    Healthcare organizations like Defendant are prime targets for cyberattacks because of the information they collect and store, including financial information of patients, login credentials,

42.    The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of

---

[5] According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities. Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

8

LGL9797A11A0AAA.000243.15.38.000000


dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

43.    Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name. Identity thieves also have been known to give a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

44.    According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[6] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[7]

45.    According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours. *Id.* at 6.

---

[6] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).
[7] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively. *Id.* at 9. Consumers who received a breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen. *Id.* at 10. More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

46.     Healthcare organizations are prime targets for cyberattacks because of the information they collect and store, including financial information of patients, login credentials, insurance information, medical records and diagnoses, and personal information of employees, customers and patients—all extremely valuable in underground markets.

47.     This was known and obvious to St. Andrew's as it observed frequent public announcements of data breaches affecting the healthcare industry and knew that information of the type it collected, maintained, and stored is highly coveted and a frequent target of cybercriminals.

48.     For example, a report by the HIPAA Journal noted that "Between 2009 and 2022, 5,150 healthcare data breaches of 500 or more records have been reported to the HHS' Office for Civil Rights. Those breaches have resulted in the exposure or impermissible disclosure of 382,262,109 healthcare records. That equates to more than 1.2X the population of the United States. In 2018, healthcare data breaches of 500 or more records were being reported at a rate of around 1 per day. Fast forward 5 years and the rate has more than doubled. In 2022, an average of 1.94 healthcare data breaches of 500 or more records were reported each day."[8]

---

[8] https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited Feb. 2, 2024).



HEALTHCARE DATA BREACHES OF 500 OR MORE RECORDS



49.    Further, the FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[9]

51.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[10]

---

[9] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://Estrella.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed February 25, 2025).
[10] *Id.*



52.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

53.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

54.    These FTC enforcement actions include actions against healthcare entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

55.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

56.    Defendant failed to properly implement basic data security practices.



57.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Customers' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

58.    Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its current/former employees and prospective employees; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class Members.

59.    Defendant flagrantly disregarded and/or violated Plaintiffs' and the Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff' and Class Members' prior written consent to disclose their PII to any other person—as required by laws, regulations, industry standards and/or internal department standards.

60.    Defendant flagrantly disregarded and/or violated Plaintiff's and the Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the Class Members' PII to unauthorized persons.

61.    Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's and the Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of the PII wrongfully disclosed in the Breach.

62.    Defendant flagrantly disregarded and/or violated Plaintiff's and the Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement

13



appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the Class Members' PII to protect against anticipated threats to the security or integrity of such information. Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or its own internal policies and procedures.

63.     The actual harm and adverse effects to Plaintiff and Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiff and Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost. Plaintiff and Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

64.     Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from breaches. *See Defend: Recover          from          Identity          Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for breach victims, those who are further

14

## CLASS ACTION ALLEGATIONS

67.    Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff and

Class Members bring this class action as a class action on behalf of herself and the following

classes:

> All persons residing in the United States who were prospective employees, and/or
> current or former employees of Defendant St. Andrew's and whose PII was
> disclosed by Defendant to unauthorized third-parties as a result of the Data Breach.

> All persons residing in the United States who were residents of Missouri  and
> who were prospective employees, and/or current or former employees of
> Defendant St. Andrew's and whose PII was disclosed by Defendant to
> unauthorized third-parties as a result of the Data Breach (the "Missouri Class").

68.    Excluded from the Classes are the following individuals and/or entities: Defendant and

Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

Defendant have a controlling interest; all individuals who make a timely election to be excluded

from this proceeding using the correct protocol for opting out; and all judges assigned to hear any

aspect of this litigation, as well as their immediate family members.

69.    <u>Numerosity</u>: On information and belief, the putative Classes are comprised of tens

of thousands of individuals making joinder impracticable.  Disposition of this matter as a class

action will provide substantial benefits and efficiencies to the Parties and the Court.

70.    <u>Commonality and Predominance</u>: The rights of Plaintiff and each other Class

Members were violated in a virtually identical manner as a direct and/or proximate result of

Defendant's 'willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

Questions of law and fact common to all Class Members exist and predominate over any questions

affecting only individual Class Members including, *inter alia*:

> a)    Whether Defendant willfully, recklessly and/or negligently failed to
> maintain and/or execute reasonable procedures designed to prevent
> unauthorized access to Plaintiff's and the other Class Members' PII;

16

b)      Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PII;

c)      Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PII;

d)      Whether Defendant breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PII;

e)      Whether Defendant was negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PII;

f)      Whether, by publicly disclosing Plaintiff's and the other Class Members' PII without authorization, Defendant invaded their privacy; and

g)      Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PII.

71.    <u>Adequacy</u>: Plaintiff and their counsel will fairly and adequately represent the interests of the other Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests. Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

72.    <u>Typicality</u>: Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PII.

73.    <u>Superiority and Manageability</u>: A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims. Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.



74.    Class certification, therefore, is appropriate pursuant to Missouri Rule of Civil Procedure 52.08 because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

75.    <u>Policies Generally Applicable to the Case</u>: Class certification also is appropriate pursuant to Missouri Rule of Civil Procedure 52.08 because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

76.    The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights. Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

77.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

78.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

79.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.



## COUNT I
## BREACH OF IMPLIED CONTRACT

80.     The preceding factual statements and allegations are incorporated herein by reference.

81.     Plaintiff and the other Class Members, as part of their agreement with Defendant St. Andrew's and as a requirement of employment and/or prospective, provided Defendant their PII.

82.     In providing such PII, Plaintiff and the other Class Members entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class members' PII, including by virtue of the representations in its privacy policies.

83.     Under the implied contract, Defendant were obligated to not only safeguard the PII, but also to provide Plaintiff and the Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

84.     Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their PII.

85.     As a direct result of Defendant's breach of their duty of confidentiality and privacy and the disclosure of Plaintiff's and the other Class Members' confidential information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

86.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach;

19

(v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the Class Members are entitled to nominal damages.

**COUNT II**
**NEGLIGENCE**
**(On behalf of Plaintiff and the Class and the Missouri Class)**

87.     The preceding factual statements and allegations are incorporated herein by reference.

88.     Plaintiff brings this Count on her own behalf and on behalf of the Class and the Missouri Class (the "Classes" for the purposes of this Count).

89.     Defendant owed, and continues to owe, a duty to Plaintiff and the Classes to safeguard and protect their PII.

90.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PII.

91.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PII would result in an unauthorized third-party gaining access to such information for no lawful purpose.

92.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for hiring and employment purposes only, and/or not disclose their PII to unauthorized third-parties.

93.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.



94.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third-party.

95.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Classes in Defendant's possession was adequately secured and protected.

96.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former prospective employees' and current/former employees' PII that Defendant was no longer required to retain pursuant to regulations.

97.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Classes.

98.    Defendant's duty to use reasonable security measures arose as a result of the contractual relationship that existed between Defendant and Plaintiff and the Classes.

99.    Defendant was also subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Classes.

100.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Classes was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

101.    Plaintiff and the Classes were the foreseeable and probable victims of any inadequate security practices and procedures.  Defendant knew or should have known of the



inherent risks in collecting and storing the PII of Plaintiff and the Classes, the critical importance of providing adequate security of that information, and the necessity for encrypting or redacting PII stored on Defendant's systems.

102.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Classes.

103.    Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PII of Plaintiff and the Classes, including basic encryption techniques freely available to Defendant.

104.    Plaintiff and the Classes had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

105.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Classes as a result of the Disclosure/Data Breach. Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Classes within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third-parties.

106.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Classes.

107.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third-persons as a result of the Disclosure/Data Breach.

108.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Classes by failing to implement industry standard protocols and exercise

22



reasonable care in protecting and safeguarding the PII of Plaintiff and the Classes during the time the PII was within Defendant's possession or control.

109.   Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Disclosure/Data Breach.

110.   Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Classes in the face of increased risk of theft.

111.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Classes by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former employees', and prospective employees' PII.

112.   Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Classes the existence and scope of the Disclosure/Data Breach.

113.   As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the members of the Classes confidential information, Plaintiff and the members of the Classes suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

114.   Plaintiff and the other Classes suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased

risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Classes are entitled to nominal damages.

115. Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.

116. Defendant's conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Classes.

117. Plaintiff and the Classes are within the class of persons that the FTC Act was intended to protect.

118. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Classes.

119. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Classes have suffered and will suffer injury, including but not limited to:

   a) actual identity theft;



b) the loss of the opportunity of how their PII is used;

c) the compromise, publication, and/or theft of their PII;

d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

e) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Classes; and

g) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Classes.

120.   As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Classes have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

121.   Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Classes have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further



unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

122. Plaintiff and the Classes are therefore entitled to damages, including actual and compensatory damages, restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## COUNT III
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

123. The preceding factual statements and allegations are incorporated herein by reference.

124. Plaintiff brings this Count on her own behalf and on behalf of the Class and the Missouri Class (the "Classes" for the purposes of this Count).

125. Plaintiff's and the other members of the Classes' PII was (and continues to be) sensitive and personal private information.

126. By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other members of the Classes' PII and the resulting Breach, Defendant wrongfully disseminated Plaintiff's and the other members of the Classes' PII to unauthorized persons.

127. Dissemination of Plaintiff's and the other members of the Classes' PII is not of a legitimate public concern; publicity of their PII was, is and will continue to be offensive to Plaintiff, the other members of the Classes and all reasonable people. The unlawful disclosure of same violates public mores.

128. As a direct result of Defendant's breach of their duty of confidentiality and privacy and the disclosure of Plaintiff's and the members' of the Classes confidential information, Plaintiff and the members of the Classes suffered damages, including, without limitation, loss of the benefit



of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation, and loss of enjoyment of life.

129.    Plaintiff and the members of the Classes suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

130.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other members of the Classes' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PII) without their authorization or consent.

### COUNT IV
### NEGLIGENT TRAINING AND SUPERVISION

131.    The preceding factual statements and allegations are incorporated herein by reference.

132.    Plaintiff brings this Count on her own behalf and on behalf of the Class and the Missouri Class (the "Classes" for the purposes of this Count).

133.    At all times relevant hereto, Defendant owed <u>and owe</u> a duty to Plaintiff and other members of the Classes to hire competent employees in the cybersecurity and technology departments, and to train and supervise them to ensure they recognize the duties owed to all parties



whose confidential information is stored in their systems, including prospective employees, and current/former employees.

134.   Defendant breached its duty to Plaintiff and other members of the Classes by allowing its employees to give access to prospective and current/former employees' PII to an unauthorized user.

135.   As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and members of the Classes' confidential information, Plaintiff and members of the Classes suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation, and loss of enjoyment of life.

136.   Plaintiff and the members of the Classes suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft.

**COUNT V**
**NEGLIGENCE *PER SE***

137.   Plaintiff and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

138.   Plaintiff brings this Count on her own behalf and on behalf of the Class and the Missouri Class (the "Classes" for the purposes of this Count).



139.   Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Classes' PII.

140.   Defendant breached its duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Classes PII.

141.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

142.   The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the statutes described herein.

143.   Plaintiff and Class members were within the Class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues was intended to guard against.

144.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Classes, Plaintiff and members of the Classes would not have been injured.

145.   The injuries and harms suffered by Plaintiff and members of the Classes were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and members of the Classes to experience the foreseeable harms associated with the exposure of their Private Information.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the members of the Classes respectfully request that the Court enter judgment in their favor and against Defendant, as follows:



A.  Declaring that Defendant breached its fiduciary duty to Plaintiff and the Classes;

B.  Declaring that Defendant breached their implied contract with Plaintiff and the Classes;

C.  Declaring that Defendant violated the Missouri Merchandising Practices Act;

D.  Declaring that Defendant negligently disclosed Plaintiff's and the Class Members' PII;

E.  Declaring that Defendant was negligent by negligently training and supervising its employees;

F.  Declaring that Defendant was negligent *per se;*

G.  Ordering Defendant to pay actual damages to Plaintiff and the Classes;

H.  Ordering Defendant to disseminate individualized notice of the Breach to Plaintiff and the Classes;

I.  For an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged herein;

J.  Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the Classes;

K.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

L.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff and the Classes respectfully demand a trial by jury on all of their claims and causes of action so triable.

Dated: March 18, 2025

Respectfully submitted,


SHAMIS & GENTILE P.A.
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.



Electronically Filed - St Louis County - March 18, 2025 - 10:37 AM

ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

**ATTORNEY FOR PLAINTIFF AND
THE CLASSES**

31

LCL9797A11A0AAA.000243.38.38.000000

